DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

BARNES AND TUCKER COMPANY, Joseph J. Molnar, Albert J. Novotny, William H. Daisley, Bethenergy Mines Inc., and Donald Smith, Respondents.

Nos. 91–3851, 91–3859.

United States Court of Appeals, Third Circuit.

Argued June 19, 1992.

Decided July 16, 1992.

Marshall J. Breger, Sol. of Labor, Donald S. Shire Associate Sol., Michael J. Denney, Counsel for Appellate Litigation, and C. William Mangum (argued), Atty., U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for petitioner.

John J. Bagnato (argued), Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for respondents Barnes & Tucker Co. and Bethenergy Mines Inc.

Blair V. Pawlowski, Pawlowski, Creany, Tulowitzki, Bilonick & Walter, Ebensburg, Pa., for respondents Joseph J. Molnar and Donald Smith.

Before: GREENBERG and NYGAARD, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

We are presented with a conflict between the Director of the Office of Worker's Compensation Programs (Director) and the Benefits Review Board, Department of Labor (Board), over the proper interpretation of 20 C.F.R. § 725.535 (1991).[1] The regulation was promulgated by the Secretary of Labor pursuant to the Federal Mine Safety and Health Act, 30 U.S.C. §§ 801 to 962. (West 1986 & 1992 Supp.) Section 725.-535(d) provides in part that legal fees awarded as part of state pneumoconiosis benefits are to be excluded when determining the extent to which federal Black Lung benefits are offset by state benefits. We conclude that the Director's interpretation of the method of offset under § 725.535 is neither unreasonable nor inconsistent with the regulation. We will therefore grant the petition for review and reverse the Board decisions consolidated for this appeal.

---

\* Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Section 725.535(d) provides, in part:
   Amounts paid or incurred or to be incurred by the individual for medical, legal, or related expenses in connection with this claim for State or Federal benefits ... are excluded in computing the reduction under paragraph (b) of this section, to the extent that they are consistent with State or Federal law.

## I.

The facts and procedural history of these cases are not disputed. Joseph J. Molnar, Albert J. Novotny, William H. Daisley and Donald Smith (claimants) were coal miners employed in the Commonwealth of Pennsylvania.[2] Barnes & Tucker is the designated responsible operator, 30 U.S.C. § 802(d), liable for benefit payments to Molnar, Novotny, Daisley. Bethenergy is the designated responsible operator liable for benefit payments to Smith.

Each claimant was awarded federal black lung benefits in addition to state Black Lung benefits from Pennsylvania. The state referee awarded each claimant a sum certain attributable to legal fees, pursuant to the Pennsylvania Workmen's Compensation Act, 77 P.S.Ann. § 998 (West 1992). In each award, the state referee did not specify the manner in which the claimant would pay his legal fee, that is, the award did not specify whether the fees were to be paid as a percentage of the claimant's weekly state benefits or paid as a lump sum at the beginning or end of the state benefits.

Under the Federal Mine Safety and Health Act, federal Black Lung benefits awarded to a claimant are offset by any federal or state Workmen's Compensation benefits received because of death or disability due to pneumoconiosis. 30 U.S.C. § 932(g). The offset provision was enacted to avoid the duplication of Workman's Compensation benefits by Black Lung benefits. *See Coal Mine (BLBA) Procedure Manual*, Chapter 2–1403, ¶ 7 (February 1980). In addition, Department of Labor regulations provide that legal expenses incurred in a claimant's state Black Lung claim must be excluded from the calculation of offset. 20 C.F.R. § 725.535(d). Where the state award or a state statute

requires a particular method for paying legal fees, or where the claimant and his attorney have agreed to a particular method of payment, the Director will use that method for calculating the exclusion of legal fees from offset. *Coal Mine (BLBA) Procedure Manual*, Chapter 2–1403, ¶ 11(c). Where no method of payment is provided by statute or agreement,[3] the Director presumes that a claimant will use as much of his initial benefit payments as is necessary to pay his attorney's fee. *Id.* Thus, federal benefits will not be offset until the claimant's state attorney's fees are paid. This method is known as the "up-front" method.[4]

Here, the Deputy Commissioner of Labor utilized the up-front method to determine the offset. Barnes & Tucker objected to the offset determinations as to Molnar, Novotny, and Daisley, and appealed from the Deputy Commissioner's award of federal benefits to the Office of Administrative Law Judges. Bethenergy Mines likewise objected to the Deputy Commissioner's offset determination in Smith's case, and also appealed the award of federal benefits to the Office of Administrative Law Judges. The ALJ rejected the Deputy Commissioner's method of determining offset and modified the federal award according to the formula announced by the Benefits Review Board in *Scuilli v. Bethlehem Mines Corp.*, 8 BLR 1–206 (1985). The Director appealed the decisions to the Benefits Review Board. The Benefits Review Board affirmed. The Director petitioned this Court for review of both final orders of the Benefits Review Board and the cases were consolidated for appeal.

## II.

Our review of the Benefits Review Board's final order is based on § 422(a) of

---

**2.** Though named in the caption of this case, Molnar, Novotny, Daisley, and Smith informed the court that they will not be participating in this appeal. Another appeal involving the precise issue presented here, *Director, O.W.C.P. v. Barnes & Tucker and Charles M. Gray*, C.A. No. 92–3055, is being stayed pending a decision in this case.

**3.** In Pennsylvania there is no method for determining *how* legal expenses are to be paid. The Act merely prescribes a limitation on the maximum fees.

**4.** Paragraph 11(c) of the *Coal Mine Procedure Manual* provides authority for the up-front method.

the Black Lung Benefits Act, 30 U.S.C. § 932(a), which incorporates § 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c) (West 1986 & 1992 Supp.). We review the decisions of the Board for error of law and to assure ourselves that it has adhered to the statutory scope of review. *Hillibush v. United States Department of Labor, Benefits Review Board*, 853 F.2d 197, 202 (3d Cir. 1988); *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 (3d Cir.1986). Thus, our review of the Board's legal determinations is plenary. *Carozza v. United States Steel Corp.*, 727 F.2d 74, 77 (3d Cir.1984).

We must, however, defer to an agency's consistent interpretation of its own regulation unless it is "plainly erroneous or inconsistent with the regulation." *Director, O.W.C.P. v. Mangifest*, 826 F.2d 1318, 1323 (3d Cir.1987), quoting *Bowles v. Seminole Rock and Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). We owe such deference to the Director, not to the Board, for the Director makes policy under the Black Lung Act. *Id.* However, we will not defer to an "interpretation" in an adversary proceeding that strains "the plain and natural meaning of words in a standard," *Bethlehem Steel Corp. v. O.S.H.A.*, 573 F.2d 157, 161 (3d Cir.1978), nor will we give deference to an interpretation of a regulation that implies language that does not exist in the regulation. *Id.*

We are thus faced with a two-fold inquiry. First, we must determine whether the Board's decisions, in *Molnar* and *Smith*, which rejected the Director's interpretation of § 725.535(d), were erroneous as a matter of law. Second, we must determine whether the Director's interpretation of 20 C.F.R. § 725.535(d) is plainly erroneous or inconsistent with that regulation.

### III.

■ It is undisputed that neither the Black Lung Benefits Act nor the Department of Labor's regulations expressly set forth a method for determining how attorney's fees are to be apportioned over a state benefit award where there is neither a state statute apportioning such fees nor an agreement between a claimant and his lawyer. So the choice of method to use is a pure policy decision—one that is left to the Director, and not the Board, because the Director is the body within the Department of Labor authorized to make Black Lung policy. *Bethlehem Mines Corp. v. Director, O.W.C.P.*, 766 F.2d 128, 130 (3d Cir.1985) (requiring deference to Director, not to the Board, in construction of regulations). We conclude that the Board erred by supplanting the Director's interpretation of § 725.535(d) with its own.

■ Our conclusion is initially based, not on the merits of the conflicting interpretations of § 725.535(d) proffered by the Director and the Board, but on the structure of "split-enforcement" agency decisionmaking mandated by Congress under the Black Lung Benefits Act. *See generally*, Johnson, *The Split–Enforcement Model: Some Conclusions from the OSHA and MSHA Experiences*, 39 Admin.L.Rev. 315, 317–23 (1987). In *Bethlehem Mines Corp. v. Director, O.W.C.P., supra*, we said that Congress delegated its rule-making powers under the Act to the Secretary of Labor, who in turn redelegated powers under the Act to the Director. 766 F.2d at 130. The Board, however, is an adjudicatory tribunal, and has no authority to either make rules or formulate policy, and the interpretation it gives to the Act is "not entitled to any special deference from the courts." *Potomac Electric Power Co. v. Director, O.W.C.P.*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446. So we generally defer to the Director's interpretation of the regulations unless it is "plainly erroneous or inconsistent with the regulation." *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *But see Bonessa v. United States Steel*, 884 F.2d 726, 732 (3d Cir.1989) (where Director takes no position in an adjudication, we will credit the Board's interpretation of a regulation "to the extent that it is relying on an appropriate analysis provided by the Director.").

In its *Scuilli* decision, the Board had established a method for determining how legal fees are to be excluded from the calculation of offset under 20 C.F.R.

§ 725.535(d). Under this method, a legal fee is spread evenly over the life of a benefit award, on a monthly basis, subtracting the prorated amount from the monthly benefit, to result in a net state monthly benefit payment. The net state monthly benefit amount is then used to determine offset. The Board reasoned that its decision in *Scuilli* was dispositive of the three appeals in *Molnar* because:

> in cases where State lump-sum attorney's fees are awarded without any mandate as to the required method for their disbursement, we continue to hold that the proper method of calculation for purposes of Section 725.535 requires the Federal benefits to be offset against the *net* State benefits for each month.

*Molnar v. Barnes & Tucker, et al.*, BRB Nos. 89–609 BLA, 89–609 BLA–A, 88–3981 BLA, 89–3476 BLA (Oct. 4, 1991), at 3–4.

We here reaffirm our view that the Board is "merely an adjudicatory tribunal" with "no authority to make rules or formulate policy." *Bethlehem Mines Corp.*, 766 F.2d at 130. By interposing its own method of excluding legal fees from the offset calculation, the *Scuilli* method, the Board exceeded its statutory authority—which is limited to deciding discrete questions of law, *see e.g. Carozza v. United States Steel Corp.*, 727 F.2d at 76 (Board has authority to decide whether a particular regulation is consistent with the underlying statutory scheme), and to deciding whether a finding of fact made by an administrative law judge was based on substantial evidence, 33 U.S.C. § 921(b)(3).

In an analogous case, *Bethlehem Mines Corp. v. Director, O.W.C.P.*, *supra*, the Secretary of Labor issued a regulation making the responsible operator liable for *prejudgment interest*, 20 C.F.R. § 725.-608(a). This regulation likewise was given conflicting interpretations by the Board and the Director. The Board affirmed a decision by the ALJ modifying the Deputy Commissioner's award of benefits, based on its own interpretation of the Black Lung regulation. 766 F.2d at 129. We reversed the Board, concluding that the Director's interpretation was entitled to deference, and that since it was neither plainly erroneous nor inconsistent with the regulation, such interpretation prevailed over the conflicting rule promulgated by the Board. 766 F.2d at 130.

Such is the case here. The Board did not affirm the ALJ's decision in *Molnar* and *Smith* on the grounds that the Deputy Commissioner's award was inconsistent with the Black Lung statutory scheme. Nor did the Board base its decision on the grounds that the Deputy Commissioner's award was not based on substantial evidence. Instead, the Board decided that the Director's position was contrary to the Board's rule. Since this decision merely replaces the policy choice of the Director with a policy of the Board, we conclude that the Board erred.

### IV.

Respondents Barnes & Tucker and Bethenergy Mines urge us to affirm the Board because, they argue, the Director's up-front offset method is plainly erroneous and not entitled to deference. We disagree. It is apparent that the up-front offset method is better suited to effectuate the remedial purpose of the Black Lung Benefits Act. 30 U.S.C. § 901; *See generally Harman Mining Co. v. Director, O.W.C.P.*, 826 F.2d 1388, 1390–91 (4th Cir. 1987) (discussing remedial purpose of the offset provision and concluding that the only valid purpose for offset is to avoid duplication of benefits).

First, by requiring that state benefits be applied to satisfy a claimant's obligations for attorney's fees at the beginning of the state benefit award, the up-front offset method ensures that a claimant will receive *some* federal compensation during a period when he would otherwise receive no state compensation. This is because federal benefits would not be offset for the first several months of the state benefit award while the fee is being paid.

Second, the up-front method ensures that legal expenses will actually be excluded, rather than "averaged out" of the calculation. This is because federal benefits are generally much less than state benefits. For example, if a claimant is awarded $500.00 per month in state benefits for a

period not to exceed 500 months, $200.00 per month in federal benefits, and $1,000.00 in legal expenses, and the state does not provide a method to apportion legal expenses and the claimant and his attorney have not agreed to a method for compensation, under the Board's method, the legal expenses would be averaged over the life of the state award and the monthly state award would be reduced by $2.00 per month to account for legal expenses ($1,000.00 divided by 500 months). The resulting $498.00 per month state award would totally offset the $200.00 in federal Black Lung benefits. Under the up-front offset method, however, the first two months of the state award would be presumed to be used to pay off the claimant's state legal expenses ($500.00 multiplied by 2 months). Thus, during the first two months, the federal benefits would not be offset and would be paid in full to the claimant. Beginning with the third month, the federal benefits would be completely offset by the state award.

Clearly, under the Board's method none but the most enormous of legal expenses would affect the calculation of offset (in the above example, legal expenses would have to exceed $150,000.00 [$300.00 multiplied by 500 months] before they would be excluded from offset). The up-front offset method insures that a claimant's benefits are not diminished for reasons other than the *duplication* of benefits, thereby effectuating Congress' intent that coal miners be adequately compensated for disability due to pneumoconiosis. *Harman Mining Co.*, 826 F.2d at 1390–91.

By contrast, the Board's method of calculating offset announced presents obvious practical difficulties. First, the Board's method does not reflect how lawyers are actually paid. By apportioning an attorney's fee over the life of the state benefit award, the Board's method results in the anomalous situation that lawyers would be compensated at different rates depending on the length of the award. For example, a lawyer awarded $1,000.00 in expenses out of an award extending over 500 months would be paid at a rate precisely one-half that of a lawyer awarded $1,000.00 in expenses out of an award extending over 250 months. Next, the Board's method does not guarantee that legal expenses will actually be remunerated. This becomes clear when state benefits are awarded over an extended period and the claimant dies before the end of the period. If legal expenses are apportioned on a monthly basis, the claimant's attorney would not recover the remainder of his fee because payments may cease when the claimant dies. Last, the Board's method is more difficult to administer than the up-front method, requiring that legal fees be monitored over several years rather than several months. Clearly, the up-front offset method presents a more reasonable interpretation of § 725.535(d).

Respondents further contend that the Director's up-front offset method is inconsistent with the § 998 of the Pennsylvania Workmen's Compensation Act. This argument is based on a misreading of the Pennsylvania statute. Respondents argue that § 998 provides a statutory formula for excluding attorneys fees in making offset calculations: "One simply reduces each weekly compensation payment by the 20 per cent attorneys fee awarded, until the totality of the attorneys fee is allowed, and offset only that amount against federal black lung entitlement." *Respondent's Brief* at 15.

This "formula" is based on one mistaken premise, that is, that *all* state black lung benefit awards will be precisely equivalent to 20 per cent of the entire award. This twists the plain language of section 998, which provides merely that attorneys fees in Pennsylvania cannot *exceed* 20 per cent of the black lung benefits awarded. 77 P.S.Ann. § 998. It is apparent from the plain language of the statute that a state referee can award *any* amount for reasonable attorneys fees *up to* 20 per cent of the award.

Further, the evidence demonstrates that the Pennsylvania workmen's compensation referee in fact pre-determines the attorneys fee in light of the total probable award. Even more importantly, the evidence regarding Smith indicates that the

referee ordered the counsel fee to be *"deducted from the* compensation *and forwarded by separate draft to claimant's counsel by the defendant-employer."* *Smith v. Bethlehem Mines Corp.,* No. 82–615, Pennsylvania Bureau of Worker's Compensation (January 24, 1983) (state black lung benefit award of Virgil F. Moraca, worker's compensation referee) p. 4. Respondent's reasoning, that the Director's method of calculating legal expenses violates state law, is specious.

V.

In sum, the Director's interpretation of 20 C.F.R. § 725.535(d) is neither plainly erroneous nor inconsistent with the regulation. We will defer to this interpretation, rather than the interpretation adopted by the Board, because it reasonably promotes the remedial purposes of the Black Lung Benefits Act. We conclude that the Benefits Review Board erred by affirming the decisions of the Administrative Law Judge. We further conclude that the Director's method for determining how legal expenses are to be apportioned to calculate the offset of Federal black lung benefits is not plainly erroneous, nor is it inconsistent with 20 C.F.R. § 725.535(d). We will grant the Director's petition for review and reverse the Benefits Review Board in these consolidated appeals and remand for a recalculation consistent with this opinion.