202 F.3d 656 (3rd Cir. 2000)
 PENNSYLVANIA TIDEWATER DOCK COMPANY, PETITIONER
V.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; AND OTIS LEWIS, RESPONDENTS (No. 0090-1:97-1583)
 No. 98-6325
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued: September 30, 1999
Opinion Filed January 28, 2000
 
 On Appeal from the United States Department of Labor Benefits Review Board Michael D. Schaff, Esq. (Argued) Naulty, Scaricamazza & McDevitt, Ltd. Suite 1600 One Penn Center 1617 J.F.K. Boulevard Philadelphia, PA 19103 Counsel for Petitioner.
 Henry L. Solano Solicitor of Labor Carol A. DE Deo Associate Solicitor Joshua T. Gillelan II Senior Attorney Andrew D. Auerbach (Argued) Staff Attorney U.S. Department of Labor 200 Constitution Ave., NW Suite S-4325 Washington, D.C. 20210 Counsel for Respondents.
 
 
 1
 Before: Nygaard, Alito, and Rosenn, Circuit Judges
 
 Alito, Circuit Judge
 
 2
 Pennsylvania Tidewater Corporation ("Tidewater") petitions for review of a final order of the Benefits Review Board (the "Board") reversing an administrative law judge's ("ALJ") award of special-fund relief from workers' compensation liability under S 8(f) of the Longshore and Harbor Workers' Compensation Act (the "LHWCA"). 33 U.S.C. S 908(f) (1994). Tidewater makes two claims. It claims first that the Board applied the wrong legal standard in determining whether Tidewater was eligible for relief. Second, it claims that even if the Board correctly interpreted S 8(f), the Board departed from its proper standard of administrative review. For the reasons that follow, we hold that the Board correctly interpreted S 8(f). We conclude, however, that the Board deviated from the proper standard of administrative review. Thus, we reverse the Board and reinstate the ALJ's award of special fund relief.
 
 I.
 
 3
 The LHWCA, 33 U.S.C. S 901-50 (1994), is a workers' compensation statute that fixes disability benefits for maritime workers who are injured on the job. In order to encourage maritime employers to hire workers with permanent partial disabilities, the LHWCA contains a special provision that governs the compensation of workers who were already suffering from pre-existing conditions at the time of their workplace injuries. See 33 U.S.C. S 908(f). This section, S 8(f) of the LHWCA, creates a number of special exceptions to the normal rules of workers' compensation, which provide that an employer takes an employee as he finds him. Among these exceptions is a provision that states that when an employee with a manifest, pre-existing condition suffers a workplace injury that, in combination with the pre-existing condition, causes permanent total disability, the employer is responsible for only the first 104 weeks of workers' compensation. The remaining workers' compensation is to be paid from a special fund established pursuant to 33 U.S.C. S 944. See 33 U.S.C. SS 908(f)(1), 944. The relevant language reads as follows: "in cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide... compensation payments or death benefits for one hundred and four weeks only." 33 U.S.C. S 908(f)(1).
 
 
 4
 This Court has determined that an employer can receive special fund relief pursuant to S 8(f) only if an ALJ is satisfied that three conditions are met. First, the employee must have been suffering from a permanent partial disability at the time he was injured or sickened on the job. Second, the employee must demonstrate that the disability was manifest to the employer. Third, the employer must demonstrate that the worker's pre-existing disability contributed to the permanent total disability such that the employee's disability "is not due solely" to the workplace injury. See Director, Office of Workers' Compensation Programs v. Sun Ship Inc. ("Ehrentraut"), 150 F.3d 288, 293-95 (3d Cir. 1998). An ALJ is given the responsibility of determining whether an employer is entitled to S 8(f) relief. Only if the ALJ is satisfied that all three prongs of this test have been met may the ALJ award special fund relief.
 
 
 5
 A party aggrieved by an order of the ALJ may appeal the order to the Benefits Review Board. See 33 U.S.C. S 921(b)(3). On appeal, the Board's scope of review is limited. The Board must uphold the ALJ's findings unless the ALJ applied the wrong legal standard or the ALJ's factual conclusions were not "supported by substantial evidence in the record considered as a whole." See id. As this Court has noted, the Board may not reverse an ALJ's award of special fund relief merely because it would have reached a contrary conclusion. See, e.g., Bundens v. J.E. Brenneman Co., 46 F.3d 292, 300 (3d Cir. 1995); Elliot Coal Mining Co. v. Director, Office of Workers' Compensation Programs, 17 F.3d 616, 625-26 (3d Cir. 1994). Pursuant to S 21(c) of the LHWCA, a party that is aggrieved by a final order of the Board may appeal to the court of appeals for the region in which the workers' injury occurred. See 33 U.S.C. S 921(c).
 
 II.
 
 6
 This appeal requires us to review the Board's determination that, contrary to the decision of the ALJ, Pennsylvania Tidewater Corporation is not eligible for special fund relief from its obligation under the LHWCA to provide total disability workers' compensation benefits to an injured former employee, Otis Lewis ("Lewis"). In 1985, Lewis, a longshoreman, injured his lower back in a car accident. Since the accident, he has suffered from intermittent back pain. See Appellant's Br., App. at A-33-34. In 1991, Lewis's back pain worsened and was suddenly accompanied by numbness in his feet and legs. In January 1992, Lewis visited a series of doctors for diagnosis and treatment of this condition. See id. at A-34, 130-32. One of these doctors conducted an MRI and found a bulging disk in his spine. See id. at A-130-32, 226-27. After nerve conduction velocity studies, a different doctor found nerve root irritation that was compatible with early findings of a neuropathic process. See id. at A-131-32, 215.
 
 
 7
 In April 1993, Lewis suffered the first of two work-related accidents. In this first accident, Lewis suffered injuries to his elbow, neck, and lower back. See id. at A-34-44, 264-67. After this injury, Lewis was out of work for almost six months. In November, Lewis returned briefly to the workplace. After a day and a half, however, he decided that he still was too injured to perform any work. As he was leaving the workplace, he slipped and fell, further exacerbating his back injuries. See id. at A-59-62.
 
 
 8
 After the November accident, Lewis was treated by several doctors. Under their care, most of Lewis's medical problems resolved themselves, but he continued to suffer severe back pain. Eventually, several doctors diagnosed a radiculopathy and opined that Lewis was permanently totally disabled. See id. at A-135-37, 149-51, 245.
 
 
 9
 Lewis sued for workers' compensation pursuant to the LHWCA. Lewis's employer, Tidewater, challenged his right to compensation, and in the alternative asked for special fund relief. On January 18, 1996, after reviewing Lewis's medical record, an ALJ declared Lewis to be permanently totally disabled and awarded him total disability workers' compensation benefits under the LHWCA. See id. at A-272-74. The ALJ also found that at the time of his injury, Lewis was suffering from manifest, pre-existing, permanent partial disabilities at the time of his workplace accident and found also that these disabilities were partly responsible for Lewis's permanent total disability. Thus, the ALJ awarded Tidewater special fund relief pursuant to S 8(f). See id. at A-274-76.
 
 
 10
 The Director of the Office of Workers' Compensation Programs (the "Director") appealed the ALJ's decision to the Board. On appeal, the Board vacated the award of S 8(f) relief. It remanded the case to the ALJ, asking him to cite evidence from the record supporting his conclusion that a manifest pre-existing disability was partly responsible for Lewis's permanent total disability. See id. at A-304-10. On remand, the ALJ issued a second order reconfirming his original findings. In support of his conclusion, the ALJ pointed to Lewis's medical records and also to the testimony of several doctors. See id. at A-314-19.
 
 
 11
 The Director appealed again, and once again the Board reversed the ALJ. In a final order, it concluded that the evidence cited by the ALJ did not constitute "substantial evidence" that Lewis would have been able to work after his accident if he had not already been suffering from a permanent partial disability. See id. at 334-39. Pursuant to 33 U.S.C. S 921(c), Tidewater appealed this final order to this Court. It petitions us to reverse the Board's decision and to reinstate the ALJ's award of S 8(f) relief.
 
 III.
 A.
 
 12
 We have appellate jurisdiction over this case pursuant to 33 U.S.C. S 921(c). We exercise plenary review over the Board's interpretation of law, and we also exercise plenary review to satisfy ourselves that the Board adhered to the statutory scope of review. See Ehrentraut, 150 F.3d at 290-91; Director, Office of Workers' Compensation Programs v. Barnes & Tucker Co., 969 F.2d 1524, 1527 (3d Cir. 1992). In determining whether the Board properly limited itself to substantial evidence review, "we must conduct an independent review of the record, parallel to that of the Board's, to determine whether the ALJ's findings are supported by substantial evidence." Janusziewicz v. Sun Shipbuilding & Drydock Co., 677 F.2d 286, 290 (3d Cir. 1982); see also Nelson v. American Dredging Co., 143 F.3d 789, 793 (3d Cir. 1998); Sea Land Service, Inc. v. Rock, 953 F.3d. 56, 59 (3d Cir. 1992).
 
 
 13
 Tidewater makes two claims. First, it claims that the Board misinterpreted the requirements of S 8(f) of the LHWCA, 33 U.S.C. S 908(f). Second, it claims that the Board departed from the substantial evidence standard of review by substituting its own judgment for that of the ALJ. We address these claims in order.
 
 B.
 
 14
 First, Tidewater argues that the Board applied the wrong legal standard when determining whether Tidewater satisfied the LHWCA's contribution requirement. The LHWCA explicitly limits special fund relief to employers who can demonstrate that an injured employee's total disability or death was not "due solely" to a workplace accident or occupational disease. See 33 U.S.C. S 908(f)(1). Until now, this Court has never explicitly stated exactly what an employer must demonstrate in order to satisfy this requirement. We hold that an employer may not shift responsibility for a worker's total disability pursuant to S 8(f) of the LHWCA unless it can demonstrate that its employee's workplace injury would not have disabled the worker on its own. That is to say, in order to satisfy the requirements for special fund relief that are laid down in S 8(f), an employer must demonstrate that its worker would have been able to continue working after his workplace accident if he had not already been suffering from a pre-existing, permanent partial disability.
 
 
 15
 Tidewater argues that an employer can satisfy the contribution requirement of S 8(f) merely by showing that its employee was suffering from a pre-existing, permanent partial disability and that this pre-existing condition made the employee's disability more severe than it would otherwise have been. By Tidewater's reading, the employer does not need to convince an ALJ of the counterfactual proposition that the employee would have been able to continue working if he not did not have a pre-existing, permanent partial disability. Tidewater's interpretation, however, is untenable, and several circuits have already rejected similar interpretations. See, e.g., Louis Dreyfus Co. v. Director, Office of Workers' Compensation Programs (Millet), 125 F.3d 884, 887 (5th Cir. 1997); Director, Office of Workers' Compensation Programs v. Jaffe New York Decorating, 25 F.3d 1080, 1085 (D.C. Cir. 1994); Director, Office of Workers' Compensation Programs v. Luccitelli, 964 F.2d 1303, 1305-06 (2d Cir. 1992); CNA Insurance Co. v. Legrow, 935 F.2d 430, 436 (1st Cir. 1991); Maryland Shipbuilding and Drydock Co. v. Director, OWCP, 618 F.2d 1082, 1085 (4th Cir. 1980). A pre-existing, permanent partial disability will inevitably add to a worker's total medical problems. As a practical matter, then, if a court adopted Tidewater's interpretation of S 8(f), it would find the contribution requirement to be satisfied in every case in which a worker who had been suffering from a permanent partial disability was later totally disabled by a workplace injury. This would be true even if the later injury alone would have totally disabled the worker. The text of the statute makes clear, however, that special fund relief is not to be given to every partially disabled worker who is later totally disabled. Rather, it is to be given only in cases where a worker's later disability was "not solely due to the workplace injury." Thus, an employer is not entitled to special fund relief under S 8(f) unless it can demonstrate that workplace injuries alone would not have rendered its employee permanently and totally disabled. This is the interpretation of the statute that was correctly applied by the ALJ and the Board.
 
 C.
 
 16
 Tidewater next argues that the Board departed from the proper standard of review when it reversed the ALJ's award of S 8(f) relief. The ALJ found that Lewis was suffering from a pre-existing, permanent partial disability before his workplace injuries of 1993 and also found that Lewis's workplace injuries would not, on their own, have rendered Lewis totally disabled. If these conclusions are correct, then Tidewater was eligible for special-fund relief, even under the Board's interpretation of S 8(f). The Board was limited to substantial evidence review of the ALJ's factual findings. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Tidewater asserts that because there was substantial evidence on the record to support the ALJ's finding, the Board was required as a matter of law to uphold the ALJ, and therefore that the Board erred when it rejected the ALJ's findings. We agree.
 
 
 17
 For the purpose of this appeal, it is undisputed that Lewis was suffering from back pain before his April injury, that he suffered an injury to his back in April 1993 and that he was permanently totally disabled as of July 20, 1993.[1] The question at issue is whether there was substantial evidence to support the ALJ's conclusions that Lewis's April workplace injury exacerbated Lewis's pre-existing conditions leaving him permanently, totally disabled, but that the April workplace injury was not sufficiently severe that it would have, by itself, rendered Lewis permanently totally disabled. We find that there was substantial evidence to support these findings.
 
 
 18
 To begin, we note that there is no expert testimony on the record that explicitly addresses the question of whether Lewis's injury on its own would have rendered Lewis completely partially disabled. In such circumstances, a court must come to a conclusion through inference. The Fifth Circuit discussed recently some of the factors a judge should consider when determining whether a workplace injury would not, on its own, have totally disabled a worker: it found "the fact-finder's inquiry must of necessity be resolved by inferences based on such factors as the perceived severity of the pre-existing disabilities and the current employment injury, as well as the strength of the relationship between them." Ceres Marine Terminal v. Director, Office Worker's Compensation Programs, 118 F.3d 387, 391 (5th Cir. 1997). We agree that such factors are highly relevant to the judge's ultimate decision.
 
 
 19
 In the case before us, it is undisputed that before his workplace accident, Lewis was already suffering from back conditions that caused severe back and leg pain. Since a 1985 car injury, Lewis had been continually suffering from back pain. See Appellant's Br., App. at A-33-34. In January 1992, more than a year before his accident, Lewis's back pain became so severe that he sought advice from a series of doctors. See id. at A-34. These doctors found a bulging disk and the beginnings of a neuropathic process in his back and legs. They attributed his pain at this time to these conditions. See id. at A-169-72, 214-15, 226-27.
 
 
 20
 There is also evidence on the record to support the ALJ's finding that pre-existing conditions caused much of the crippling back pain about which Lewis complained in the months after his April injury. We note at the outset that Lewis testified in March 1995 that his April injury had caused him new back pains, that had never gone away. See id. at A-62, 77, 80. Doctors who examined Lewis during the year after his back injury disagreed about the cause of this disabling back pain. One orthopedic specialist, Dr. Bong Lee, examined Lewis in September and opined that none of the chronic low back pain that Lewis claimed to be suffering was attributable to workplace injury. See id. at A-249.[2] Another orthopedic specialist, Dr. Noubar Didizian, performed an extensive examination of Lewis in March 1994. He concluded that there was no evidence of any traumatic injury to Lewis's back. See id. at A-234.[3] Lewis's personal doctor, however, opined that the back pains that have tormented Lewis since his injury were caused primarily by his April accident. This doctor admitted that Lewis's pre-existing conditions could cause precisely the symptoms that Lewis reported after his accidents. Nevertheless, on the basis of circumstantial evidence and the evidence of an EMG test, he concluded that Lewis's disabling pain was due primarily to the workplace injury. See id. at A-175-78, 180-82.[4]
 
 
 21
 When there is competing evidence as to causation on the record, it is the job of the ALJ to weigh the conflicting evidence and produce a finding of fact. "This Court does not have the expertise necessary to properly evaluate the complex and frequently conflicting testimony of neurological surgeons, orthopedists, and other medical experts on the score. Instead we must leave this particular factfinding decision precisely where Congress placed it--with the ALJ." Ceres, 118 F.3d at 391. In the instant case, the ALJ found that the truth fell somewhere between the two extremes. The bulk of Lewis's back pain could be attributed to Lewis's pre-existing back condition, but the workplace injury also contributed to this pain. Given the conflicting testimony on this point, such a conclusion is reasonable.
 
 
 22
 There is evidence on the record to support the conclusion that Lewis was not suffering significantly more pain after the accident than he had been before. It is undisputed that Lewis was able to walk without the assistance of a cane. Dr. Sedacca, the doctor who gave the most dire diagnosis of Lewis's condition, admitted that he was fit for many types of work. He was simply not able to engage in heavy longshore work. See id. at A-162-63. Some doctors who examined Lewis after June 8, 1993 concluded that Lewis would eventually be able to return even to heavy labor. See id. at A-234, 249.[5] Nevertheless, Lewis testified that he was in more pain after the April injury than he had been before. After weighing the conflicting evidence, the ALJ concluded that the April injury would not have been permanently disabling on its own. It caused enough pain, however, to tip a permanently partially disabled man over the edge into permanent total disability. Given the evidence on the record, such a conclusion is reasonable.
 
 
 23
 In sum, we conclude that there is evidence on the record to support a finding that Lewis was suffering from partially disabling back conditions before the April 1993 injury, and that Lewis injured his back in April 1993. There is evidence that Lewis was not suffering significantly more pain after the April injury than before, and that much of the back pain that Lewis suffered after the accident was due in significant part to these pre-existing back conditions. Such findings are sufficient to support the reasonable inference that Lewis's April injury was not so severe that it would, on its own, have rendered Lewis permanently totally disabled. In reaching this conclusion, we do not mean to imply that we would have reached the same conclusions as the ALJ if we were the fact-finder. We simply point out that a reasonable finder of fact could reach these conclusions. Because a reasonable judge could conclude that Lewis was suffering from a serious disability and that his workplace injuries merely pushed him over the edge into permanent total disability, we conclude that the Board erred when it overturned the ALJ's findings.
 
 IV.
 
 24
 An employer who seeks special fund relief pursuant to S 8(f) must demonstrate not only that a pre-existing permanent partial disability contributed to a more severe, later disability, but also that the pre-existing, permanent partial disability was "manifest" to the employer. The ALJ specifically found that Lewis's pre-existing back condition contributed to his later total disability, and that this back condition was manifest to Tidewater. As it did not find substantial evidence that the pre-existing back condition contributed to Lewis's eventual, permanent total disability, the Benefits Review Board never asked whether there was substantial evidence on the record to support the ALJ's conclusion that this pre-existing back condition was manifest to Tidewater. Since we have reversed the Board on the issue of contribution, we must consider the question of manifestation. We conclude that there is substantial evidence to support the ALJ's conclusion that the back condition that was partly responsible for Lewis's permanent total disability was manifest to Tidewater.
 
 
 25
 According to this Court, an employee's disability is manifest if the employer is aware of the disability or if there are medical records available that would confirm the presence of a disability. See Ehrentraut, 150 F.3d at 295. ("It is the availability of knowledge rather than actual knowledge of the condition that is relevant to determining manifestation.") In early 1993, Lewis had undergone MRI tests and nerve conductivity tests. As a result of these tests, doctors diagnosed a bulging disc and the beginnings of a "neuropathic process" in his back. These conditions gave rise to significant pain and contributed to Lewis's eventual permanent total disability. The test results and the diagnosis were in Lewis's medical files and available to Lewis's employer before Lewis was injured in the workplace accident. Accordingly, we hold, that the back condition that, in part, caused Lewis's permanent total disability was manifest to Tidewater.
 
 V.
 
 26
 As there was substantial evidence to support the ALJ's conclusion that Lewis's workplace injuries did not, on their own, cause Lewis to be totally disabled; and as there was substantial evidence to support the ALJ's conclusion that the permanent back conditions that were partly responsible for Lewis's permanent total disability were manifest to Tidewater; we reverse the decision of the Board and reinstate the ALJ's award of special fund relief to Pennsylvania Tidewater pursuant to 33 U.S.C. S 908(f).
 
 
 
 NOTES:
 
 
 [1]
 The ALJ concluded that Lewis was suffering from both a pre-existing knee condition and a pre-existing back condition and that the injuries that Lewis suffered as a result of his 1993 accidents were not sufficient to have totally disabled him. See App. to Appellant's Br. at A-317. The Director disputes the ALJ's conclusion that knee pain was responsible for Lewis's disability. We agree with the director that Lewis's disability was caused entirely by back pain. Lewis would thus be employable today were it not for that disability. Nonetheless, we find that there is substantial evidence on the record to support the ALJ's conclusion that Lewis's accidents did not cause injuries to his back that would on their own have rendered him totally permanently disabled. Lewis's disabling back pain was the result of two conditions: a pre-existing condition, and an exacerbation of that condition. If Lewis had not already been suffering from a pre-existing condition, his 1993 accidents would not have left him totally disabled.
 
 
 [2]
 Dr. Lee wrote, "As far as his low back is concerned, there are no significant findings at this time. He is not disabled from any low back injury."
 
 
 [3]
 The Director urges us to disregard Dr. Didizian's testimony because he concluded that Lewis was free to return to work. It is important to remember, however, that Dr. Didizian made two separate findings. The first is that the pain Lewis suffered was caused by a degenerative condition. The second is that the pain that Lewis was suffering was not disabling. The ALJ is free to credit some parts of the testimony but not others. In this case, the first part of Dr. Didizian's testimony is not inconsistent with a great deal of other testimony. The second part of his testimony is contradicted by the other evidence. It would thus be perfectly reasonable for an ALJ to accept his first conclusion and reject the second.
 
 
 [4]
 It is worth noting that Dr. Sedacca's report discussed EMG reports that had led one doctor to conclude that Lewis's April workplace injury had caused a disabling radiculopathy. He concluded that the EMG report did not support the other doctor's competing conclusion. "There is no clinical correlation to support that study either with the patient's subjective complaints of the negative objective evaluation. MRI is a more sensitive study and if there was indeed nerve root involvement, it would have certainly been detected on MRI." Id. at A-234.
 
 
 [5]
 At least that is how we read the reports from Dr. Lee's September 1983 exam and Dr. Didizian's March 1994 exam. Dr. Lee concluded in September that Lewis was not disabled from any back injury and that most other complications of the injury had healed. Id. at 247-49; and that the primary problem from which Lewis suffers is a painful "olecranon process" over the elbow which should be surgically removed about which he concludes "Good surgical results can be expected once it is removed.... It may take three to four weeks recovery time from the surgical treatment of the olecranon process." Id. at A-249. Dr. Didizian simply states, "The patient in my opinion is fully recovered from his injury of 4/28/93 and does not require any further treatment.... It is my medical opinion that the patient can return to gainful employment with no restrictions." Id. at A-234.