

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2008

# C&C Marine v. Director OWCP

Precedential or Non-Precedential: Precedential

Docket No. 07-1867

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"C&C Marine v. Director OWCP" (2008). *2008 Decisions.* Paper 597.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/597

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1867

———

C&C MARINE MAINTENANCE COMPANY,

Petitioner

v.

ROGER BELLOWS; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR,

Respondents

———

On Petition for Review from an
Order of the Benefits Review Board,
United States Department of Labor
(Benefits Review Board No. 06-0434)

———

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2008

Before: FISHER and JORDAN, *Circuit Judges*,
and YOHN,[*] *District Judge*.

(Filed: August 6, 2008)

Leonard Fornella
Babst, Calland, Clements & Zomnir
Two Gateway Center, 8th Floor
Pittsburgh, PA  15222
        *Attorney for C & C Marine*
        *Maintenance Company*

Jonathan L. Snare
Allen H. Feldman
Mark A. Reinhalter
Peter B. Silvain, Jr.
United States Department of Labor
Office of the Solicitor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, DC  20210
        *Attorneys for Director, Office of*
        *Workers' Compensation Programs*

---

[*]The Honorable William H. Yohn Jr., United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

Robert J. Taylor
Taylor, Hladio & Alsko
337 Merchant Street
Ambridge, PA  15003
     *Attorney for Roger Bellows*

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

This appeal arises out of the Benefits Review Board's
("BRB") decision to affirm an Administrative Law Judge's
("ALJ") order that C&C Marine Maintenance Company ("C&C
Marine") must pay Roger Bellows permanent disability benefits
under the Longshore and Harbor Workers' Compensation Act
("LHWCA"), 33 U.S.C. §§ 901-950.  For the reasons that
follow, we will affirm the order of the BRB.

I.

On May 3, 2000, Roger Bellows, an employee of C&C
Marine, moved lime from one barge to another.  While doing so,
he stepped in a pile of the chemical and suffered second and
third degree chemical burns on his legs.  Five days later, on
May 8, 2000, he sought treatment for the chemical burns from
Dr. Olu Sangodeyi.  Dr. Sangodeyi removed the necrotic tissue
from Bellows' legs.  Over the next two months, Dr. Sangodeyi

monitored the wounds on Bellows' legs and found that they were healing satisfactorily.

However, Bellows continued to experience ankle pain, and on July 3, 2000, Dr. Sangodeyi ordered an x-ray of his left leg. The x-ray revealed a deformity of Bellows' distal tibia and fibula. Dr. Sangodeyi ordered further tests to determine if osteomyelitis could be the cause of the deformity,[1] but these tests ruled out osteomyelitis as a cause of Bellows' condition.

In August 2000, Dr. Sangodeyi advised Bellows to return to his primary care doctor for any further treatment because the wounds on his legs had healed. Bellows sought advice from his primary care doctor for the continuing pain in his left ankle, and the doctor referred Bellows to an orthopedic surgeon, Dr. Steven Thomas. Dr. Thomas ordered an x-ray of Bellows' left ankle, and at that time, he determined that Bellows' ankle had degenerative changes caused by either aggressive arthritis or a past traumatic episode.

Beginning in May 2000 when the accident occurred, C&C Marine made voluntary payments to Bellows for his medical bills and temporary disability benefits. After Bellows returned to work on October 2, 2000, C&C Marine ceased its payments to him, effective as of October 6, 2000.

---

[1]In Dr. Sangodeyi's records, he had noted that Bellows had a prior history of osteomyelitis in his lower left leg. Osteomyelitis is inflammation and destruction of bone caused by bacteria, mycobacteria, or fungi. The Merck Manual 317 (18th ed. 2006).

Bellows continued to experience pain in his left ankle, and on April 15, 2002, he returned to Dr. Thomas. On May 5, 2002, Bellows stopped working at C&C Marine due to this pain. Approximately two weeks later, Dr. Thomas surgically fused his ankle to his leg. As a result of this surgery, Bellows was unable to return to work at C&C Marine. On July 12, 2002, Dr. Thomas wrote a letter to Bellows' attorney, stating that "the industrial burns may have irritated [Bellows'] left ankle." At Dr. Thomas' deposition on December 15, 2004, he opined that while he did not believe that the lime burns could cause the degenerative changes to Bellows' left ankle, he believed that the lime burns exacerbated Bellows' arthritic condition.

On October 17, 2002, Bellows filed a claim against C&C Marine under the Jones Act in the Beaver County Court of Common Pleas. This claim was dismissed on October 7, 2003. On October 13, 2003, Bellows filed a claim against C&C Marine for disability compensation under the LHWCA with the United States Department of Labor. In Bellows' claim, he contended that he was permanently disabled and could no longer work because the chemical burns aggravated a pre-existing arthritic condition in his left ankle to the point where it needed to be surgically fused with his leg. C&C Marine challenged Bellows' claim, and in the alternative, it argued that Bellows had a pre-existing permanent partial disability, thereby entitling it to partial relief from its liability under section 8(f) of the LHWCA, 33 U.S.C. § 908(f).

The ALJ conducted a hearing on Bellows' claim, and on January 25, 2006, the ALJ issued a decision holding C&C Marine liable to Bellows for disability compensation. C&C

Marine filed a timely appeal with the BRB. On January 31, 2007, the BRB affirmed the ALJ's decision. C&C Marine's timely petition for review followed.

## II.

We exercise jurisdiction over final orders of the BRB pursuant to 33 U.S.C. § 921(c). "Our examination is limited to a determination of whether the Board acted in conformance with applicable law and within its proper scope of review. Because the Board does not administer the [LHWCA], our review of its interpretation of the Act is essentially plenary but we will respect [the Board's] interpretation if it is reasonable." *Maher Terminals, Inc. v. Dir., Office of Workers' Comp. Programs*, 330 F.3d 162, 166 (3d Cir. 2003) (internal quotation marks and citations omitted). We will find that the BRB acted within its scope of review if its findings of fact are "supported by substantial evidence in the record considered as a whole." *See* 33 U.S.C. § 921(b)(3). "[Substantial evidence] is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (internal quotation marks and citation omitted).

## III.

### A.

C&C Marine first argues that the BRB's finding that Bellows' claim was timely under the LHWCA was not supported by substantial evidence. The LHWCA requires a claimant to file a claim for disability compensation "within one

year after the injury," or "within one year after the date of the last [voluntary] payment [the employer made for such injury]." 33 U.S.C. § 913(a). In the present case, Bellows' injury occurred on May 3, 2000, and C&C Marine paid him compensation for that injury until October 6, 2000. Thus, C&C Marine contends that Bellows should have filed his claim by October 6, 2001, one year after the date of C&C Marine's last voluntary payment to him.

However, the LHWCA tolls the deadline for filing a claim, regardless of any payments made, "until the employee . . . is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury . . . and the employment." *Id.* Courts have generally found that this provision tolls the statute of limitations "until the claimant is aware of the full character, extent and impact of the harm done to him."[2] *Brown v. Jacksonville Shipyards, Inc.*, 893 F.2d 294, 296 (11th Cir. 1990) (citing *Todd Shipyards Corp. v. Allan*, 666 F.2d 399 (9th Cir. 1982); *Bath Iron Works v. Galen*, 605 F.2d 583 (1st Cir. 1979); *Stancil v. Massey*, 436 F.2d 274 (D.C. Cir. 1970)).

Utilizing this interpretation of the tolling provision, substantial evidence supports the ALJ's conclusion that the statute of limitations began to run on July 12, 2002, as that is when Bellows became aware of the relationship between his injury and his employment. On this date, Dr. Thomas wrote a

---

[2]To the extent that C&C Marine challenges the BRB's interpretation of the LHWCA, it is unavailing because this reading of the LHWCA is reasonable.

7

letter to Bellows' attorney, stating that "the industrial burns may have irritated [Bellows'] left ankle." As the ALJ and BRB found, it was at this time that Bellows was aware of both the full extent of his injury and that it was, at least in part, caused by his employment.[3]

As a result, Bellows initially had until July 12, 2003 to file his claim under the LHWCA. *See* 33 U.S.C. § 913(a). Additionally, the time for filing a claim under the LHWCA was tolled during the pendency of Bellows' Jones Act claim, which

---

[3]In its reply brief, C&C Marine argues that Bellows was aware of the relationship between his injury and his employment as of October 24, 2000. In an injury status report from that date, Bellows' doctor wrote that she told him that "the ankle pain 'could have' been aggravated by the burn." However, C&C Marine neglected to make this point in its opening brief, and thus, it has waived this argument. *See Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 202 (3d Cir. 2004) ("We have held on numerous occasions that an issue is waived unless a party raises it in its opening brief . . . ." (internal quotation marks and citations omitted)). Moreover, even though this report casts doubt on when Bellows became aware of the relationship between his injury and his employment, Bellows would not yet have realized the full impact of his injury as he had only recently returned to work. Only when he had the ankle fusion surgery in May 2002 would Bellows have become aware of the full extent of his injury, and even if the statute of limitations period had begun to run at that time, his claim would be timely.

he filed on October 17, 2002. *See* 33 U.S.C. § 913(d).[4] Bellows' Jones Act claim was dismissed on October 7, 2003, and thus, he timely filed his claim under the LHWCA on October 13, 2003, because only about three months of the applicable statute of limitations period had run. Therefore, the BRB acted within its scope of review in affirming the ALJ's conclusion that Bellows' claim was timely.

## B.

C&C Marine next argues that there was not substantial evidence to support the BRB's finding that Bellows' lime burns aggravated his pre-existing arthritic condition in his lower left leg. C&C Marine contends that Dr. Thomas' September 2000 report, which stated that Bellows had "significant degenerative joint disease in his left ankle which I do not believe is associated with the burn," demonstrates that there was no correlative link between the two. However, two years later, Dr. Thomas stated that "the industrial burns may have irritated [Bellows'] left

---

[4]Section 913(d) provides:

Where recovery is denied to any person, in a suit brought at law or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and that the defendant was an employer within the meaning of this Act and that such employer had secured compensation to such employee under this Act the limitation of time prescribed in subdivision (a) shall begin to run only from the date of termination of such suit.

9

ankle." Moreover, at Dr. Thomas' deposition, he explicitly stated that "[s]omething happened in May to [Bellows'] tibia region with the burns that exacerbated the arthritic change." Therefore, substantial evidence supported the BRB's finding that Bellows' lime burns aggravated his pre-existing arthritic condition.

## C.

C&C Marine also argues that the BRB erred in finding that C&C Marine had not presented substantial evidence that Bellows' injury was not work related. Under the LHWCA, there is a presumption that an employee's claim comes within the LHWCA's provisions "in the absence of substantial evidence to the contrary." 33 U.S.C. § 920(a). The employer may rebut this presumption by presenting substantial evidence that the employee's disability did not result from a work-related injury. *See id.* § 903(a) (stating that the LHWCA's scope for compensable injuries includes only incidents where "the disability or death results from an injury occurring upon the navigable waters of the United States"); *see also Sprague v. Dir., Office of Workers' Comp. Programs*, 688 F.2d 862, 865 (1st Cir. 1982). An employee's disability results from a work-related injury where the injury aggravates a pre-existing condition. *See Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986) (en banc) (stating general rule that a work-related injury that aggravates a pre-existing condition is fully compensable). Thus, for C&C Marine to have prevailed in rebutting the presumption, it needed to present substantial evidence that Bellows' lime burns did not cause or aggravate his arthritic condition.

10

We agree with the BRB that C&C Marine has not met its burden because it did not provide substantial evidence demonstrating that Bellows' lime burns did not aggravate his arthritic condition. C&C Marine argues that it presented substantial evidence that Bellows' lime burns did not cause his arthritic condition because Dr. Thomas initially stated that the two conditions were unrelated. Dr. Thomas, however, later changed his opinion. C&C Marine did not address Dr. Thomas' change of opinion regarding the correlation between the two conditions, and instead relied on Dr. Thomas' earlier statements alone. As a result, the BRB did not err in concluding that C&C Marine failed to put forth substantial evidence that Bellows' disability did not result from his work-related lime burn aggravating his pre-existing arthritic condition.

## D.

Finally, C&C Marine argues that if there was a relationship between Bellows' lime burns and his arthritic condition, the BRB erred in finding that C&C Marine was not eligible for relief under 33 U.S.C. § 908(f). Section 908(f)(1) provides that an employee is entitled to compensation from his employer for only one hundred and four weeks if he is injured and permanently disabled, but has a pre-existing condition "such [that his] disability is materially and substantially greater than that which would have resulted from [his] subsequent injury alone." After the employer makes these payments, "the employee . . . shall be paid the remainder of the compensation that would be due out of the special fund established in [33 U.S.C. § 944]." 33 U.S.C. § 908(f)(2).

11

For an employer to be eligible for relief under § 908(f), it must show that its employee's pre-existing disability was manifest to it. *See Pa. Tidewater Dock Co. v. Dir., Office of Workers' Comp. Programs*, 202 F.3d 656, 658 (3d Cir. 2000); *see also Dir., Office of Workers' Comp. Programs v. Sun Ship, Inc.*, 150 F.3d 288, 295 (3d Cir. 1998). An employer can establish manifestation by demonstrating that it had either actual or constructive knowledge of its employee's pre-existing disability. *See Sun Ship*, 150 F.3d at 295. To demonstrate constructive knowledge, the employer must show "that it could readily have discovered the disability by looking at the employee's medical records."[5] *Id.* (citations omitted).

---

[5]As the BRB accurately described our precedent under *Pennsylvania Tidewater Dock Co. v. Director, Office of Workers' Compensation Programs*, 202 F.3d 656 (3d Cir. 2000), and *Director, Office of Workers' Compensation Programs v. Sun Ship, Inc.*, 150 F.3d 288 (3d Cir. 1998), its interpretation of the LHWCA was reasonable. To the extent that C&C Marine argues that the BRB erred by not following the decision of the Court of Appeals for the Sixth Circuit in *American Shipbuilding Co. v. Dir., Office of Workers' Comp. Programs*, 865 F.2d 727, 732 (6th Cir. 1989), its argument is unavailing. In *American Shipbuilding*, the Sixth Circuit held that an employer can receive relief under § 908(f) by showing that an employee's pre-existing disability existed prior to his work-related injury; it did not require the disability to be manifest to the employer. 865 F.2d at 732. However, our established precedent requires the pre-existing condition to be manifest to the employer, and in so holding, we have rejected the Sixth Circuit's decision in *American Shipbuilding*. *See Sun*

12

In the present case, C&C Marine does not claim that it had actual knowledge of Bellows' pre-existing arthritic condition. Moreover, it does not claim that Bellows' medical records were readily discoverable nor has it produced any of them. Instead, C&C Marine argues that medical records identifying Bellows' arthritic condition must have existed before his accident on May 3, 2000.[6] As C&C Marine has only offered speculation that these medical records exist, substantial evidence supports the BRB's conclusion that C&C Marine failed to meet *Sun Ship*'s manifestation requirement.

## IV.

For the foregoing reasons, we will affirm the order of the Benefits Review Board.

---

*Ship*, 150 F.3d at 295-96 & n.8. Therefore, the BRB was correct in not applying *American Shipbuilding* to the present case.

[6]To the extent that C&C Marine argues that Bellows is unwilling to provide information regarding the whereabouts of these records, this argument is unavailing. Even if Bellows had such information, he would have no incentive to withhold it because his disability compensation remains the same regardless of whether C&C Marine qualifies for § 908(f) relief.

13