**HARMAN MINING COMPANY, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR and Jack Stewart, Respondents.**

**No. 86–3127.**

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1987.

Decided Sept. 1, 1987.

Mark Elliott Solomons (Arter & Hadden, Washington, D.C., on brief), for petitioner.

John J. Bagnato (Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., on brief), for amicus curiae Bethenergy Mines Inc.

Sylvia Theresa Kaser, U.S. Dept. of Labor, Office of the Sol. (George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Washington, D.C., Counsel for Appellate Litigation, on brief), Lawrence L. Moise, III, for respondents.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

WIDENER, Circuit Judge:

The Harman Mining Company (Harman) petitions for review of the decision of the Benefits Review Board upholding an award of benefits to the claimant, Jack Stewart, under Title IV of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901 *et seq.* (the Act). The only issue in this case is whether the Benefits Review Board erred by failing to offset the award of federal benefits by the amount of a previous state award, and, more precisely, whether the Secretary's regulation is in conflict with the terms of the Act. We deny the petition for review.

This case arose in 1978, when the claimant filed for benefits under the Act. Claimant had previously been awarded a lump sum of $3500 by the Industrial Commission of Virginia on account of his contracting pneumoconiosis. This award in settlement was made in 1974, and was paid on behalf of the claimant's former employer, the Quinn & Belcher Company for whom Stewart had worked prior to February 12, 1972. However, the claimant continued to labor as a coal miner for Harman Mining from 1972 until 1979.

The ALJ awarded benefits to Stewart, and held that Harman was not entitled to an offset for the $3500 previously paid to Stewart. The ALJ refused to offset this award based on 20 C.F.R. § 725.535(b), which provides that only concurrent state awards may offset a federal award of black lung benefits. Harman contends that this regulation is beyond the authority of the Secretary of Labor to promulgate. The argument goes that the regulation conflicts with the plain language of § 422(g) of the Act, 30 U.S.C. § 932(g). Harman argues that this section unqualifiedly requires all federal awards under the Act to be offset by all pneumoconiosis related state awards, regardless of when the state payments are made or for what period the payments accrue.

There is no doubt that the ALJ correctly applied the Secretary's regulation here. 20 C.F.R. § 725.535(b) states that

"[b]enefit payments to a beneficiary for any month are reduced (but not below zero) by an amount equal to any payments of State or Federal Benefits received by such beneficiary *for such month.*" (Emphasis added)

The ALJ found that no part of claimant's $3500 state award was concurrent with claimant's federal award, since that award covered benefits for a period ending before claimant became entitled to federal benefits in May 1979. The ALJ also found the

regulation to be a valid exercise of the Secretary's rulemaking authority. The decision of the ALJ was upheld by the Deputy Commissioner and by the Benefits Review Board. While 30 U.S.C. § 932(g) requires that

> "[t]he amount of benefits payable under this section shall be reduced, on a monthly or other appropriate basis, by the amount of any compensation received under or pursuant to any ... State workmen's compensation law,"

the Act does not specify when state benefits must be received in order to qualify for an offset. The statute does not require either the employer's or the Secretary's construction to be accepted, and so, the language being less than clear as to this point, there is no plain meaning to 30 U.S.C. § 932(g) with which the regulation conflicts. In such a situation, we usually defer to the Secretary's construction.

At the outset, we note the heavy burden on the employer to demonstrate the invalidity of a regulation promulgated under a statute providing a broad grant of rulemaking authority, such as §§ 422(a) and 426(a) of the Act, 30 U.S.C. 932(a) and 936(a). Such regulations are presumptively valid and will be sustained "so long as [they are] 'reasonably related to the purposes of the enabling legislation'." *Mourning v. Family Publication Services, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). Thus, deference is to be accorded to the interpretation given to a statute by the agency charged with its administration. See *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

The legislative history of the Act shows that a major reason for granting benefits to miners with black lung was the failure of the States to adequately provide for such injured persons. For example, the Committee Report on the House bill states that "[o]ne of the compelling reasons the committee found it necessary to include this [benefits] program in the bill was the failure of the States to assume compensation responsibilities for the miners covered by this program." H.Rep. No. 91–563, 91st Congress, 1st Session (1969), U.S.Code Cong. & Admin.News 1969, p. 2503, *reprinted in* the *Subcommittee on Labor, Legislative History of the Federal Coal Mine Health and Safety Act of 1969* at 1043 (1975).

Providing a minimum level of income [1] for eligible miners disabled by black lung is at the heart of the statute. But the interpretation urged by the employer here would not provide the minimum level of income. In its opinion, the Benefits Review Board explained this clearly, and we adopt its reasoning:

> If prior state awards were to offset subsequent federal benefits, there would be the anomalous result that where state benefits fall below the federal level a claimant would receive benefits below the level considered adequate by Congress, the federal benefit level. Anytime the state benefit level is below the federal level, the claimant is dependent on the federal benefits to supplement the state award and so raise his benefits to the federal standard. If total offset were allowed, the claimant's federal benefits would be reduced by the amount of the prior state award. Thus, the claimant's benefits level would be drawn down below the federal standard.

> In comparison, if the state benefits were at or above the federal level, the claimant would not depend on federal benefits to reach the "adequate" level. While all federal benefits would be completely offset by equal amounts of state monies, the claimant would still receive benefits at the federal benefit level or higher pursuant to the state law.

> The claimant, therefore, would receive inadequate benefits only when he filed for and was granted inadequate state

---

1. This minimum level at the time of Stewart's total disability was provided for in § 412(a)(1) of the Act, which provided that in the case of complete disability due to black lung, "the disabled miner shall be paid benefits during the disability at a rate equal to 50 percentum of the minimum monthly payment to which a Federal employee in Grade GS–2, who is totally disabled, is entitled at the time of payment...." 30 U.S.C. § 922(a)(1). The statute was amended in 1981 to provide for 37½% of monthly pay of GS–2 federal employees, step 1.

benefits before filing for federal payments. This result would be contrary to the intent of Congress because only inadequate state awards would cause claimants to receive inadequate benefits. The very purpose of the entitlement provision was to provide adequate benefits where the states were falling short of this responsibility.

The paramount concern expressed unequivocally and consistently in the legislative history is that adequate compensation, as defined by the federal benefit level, shall be assured in the case of an eligible applicant. Any offset provision which would diminish a federal black lung award by any amounts other than that [sic] those *duplicative* of the federal black lung award would do violence to the adequacy of compensation for total disability due to pneumoconiosis. (Emphasis in original, footnote omitted)

In sum, we find that the Secretary's regulation is consistent with 30 U.S.C. § 932(g) and is reasonably related to the purposes of the Act.

The petition for review is
DENIED.