**Gloria L. NOWLIN, Plaintiff,**

v.

**EASTERN ASSOCIATED COAL CORP., Defendant.**

**No. CIV.A.1:02 CV 51.**

United States District Court, N.D. West Virginia.

Aug. 12, 2004.

Robert F. Cohen, Jr., Cohen, Abate & Cohen, LC, Morgantown, WV, Counsel for the Plaintiff.

William S. Mattingly, Kathy L. Snyder, Jackson & Kelly PLLC, Morgantown, WV, Counsel for defendant.

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This matter comes before the Court on (1) the motion of the defendant, Eastern Associated Coal Corporation ("Eastern"), to deny relief sought in assessment of a 20% penalty (Docket No. 25) and (2) the motion of plaintiff Gloria D. Nowlin ("Nowlin") for summary judgment (Docket No. 29). These motions are effectively cross-motions for summary judgment on the final remaining issue in this case, whether Eastern is obligated to pay Nowlin a twenty percent penalty on any or all of the benefits that Nowlin received from the Black Lung Disability Trust Fund (the "Trust Fund"). On November 5, 2003, the Director of the Office of Workers' Compensation for the United States Department of Labor (the "Director") filed an *amicus curiae* brief. The motions are fully briefed and ripe for review. For the reasons that follow, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** both motions.

## I. *Case History*

On January 6, 1976, Malcolm Nowlin, a retired coal miner formerly employed by Eastern, filed a claim for benefits under the Black Lung Benefits Act (the "BLBA"), 30 U.S.C. §§ 901–945. Mr. Nowlin was initially awarded benefits on May 1, 1980. Eastern appealed the award but, before the case was heard, Mr. Nowlin died on March 17, 1981. Following his death, on April 10, 1981, his widow, Gloria Nowlin ("Nowlin"), filed an application for black lung survivor's benefits. For the next twenty years, Nowlin's claim proceeded through a protracted series of appeals to the United States Department of Labor Benefits Review Board ("BRB"), and remands to Department of Labor administrative law judges ("ALJs"). In his *amicus* brief, the Director summarized the procedural history of the administrative claim with relevant dates, as follows:

| May 4, 1981 | District director awards benefits commencing January 1, 1976 |
| --- | --- |
| February 14, 1986 | ALJ awards benefits commencing October 1, 1975 |
| June 26, 1990 | BRB vacates and remands |
| August 28, 1991 | ALJ reinstates award of benefits |
| August 17, 1993 | BRB vacates and remands |
| June 14, 1994 | ALJ reinstates award of benefits |
| August 31, 1995 | BRB vacates and remands |
| June 10, 1996 | ALJ reinstates award of benefits |
| August 14, 1997 | BRB vacates and remands |
| January 16, 1998 | BRB denied Director's motion for reconsideration and clarification |
| May 14, 1999 | ALJ reinstates award of benefits |
| June 22, 2000 | BRB affirms award |

On May 14, 1999, on a fourth remand, the ALJ awarded Nowlin benefits retroactive to May 1, 1976. Eastern appealed that decision to the BRB. This time, however, the BRB affirmed the ALJ's award of benefits.[1] Neither party filed an appeal or requested reconsideration.

Nowlin was first awarded benefits by the district director in 1981. That award included monies due from the time of Mr. Nowlin's January 1976 filing for benefits. Nevertheless, except for a brief period between October 1, 1991 through July 7, 1993, Eastern declined to pay benefits while it pursued its appeals. Therefore, the Black Lung Benefits Trust Fund (the "Trust Fund") began paying benefits to Nowlin. She received a total of $127,322.40 in benefits that "were not paid directly by Eastern." (Stip. of Fact ¶ 4.) Following a final decision on the underlying BLBA claim, in December, 2000, Eastern reimbursed $126,904.20 to the Trust Fund, (Stip. of Fact ¶ 1), and began paying benefits directly to Nowlin.

On April 1, 2002, Nowlin filed the instant action seeking to recover an additional twenty percent (20%) of the amount of benefits Eastern refused to pay her during the pendency of her claim. The 20% penalty assessment arises automati-cally under 33 U.S.C. § 914(f) when an employer is untimely in its payment of benefits awarded by an ALJ. 33 U.S.C. § 914(f). Section 914(f), however, does not provide a means to enforce the penalty award and, consequently, Nowlin brings this action under 33 U.S.C. § 921(d).[2] As reflected in the motions before the Court, the penalty provision is implemented through 20 C.F.R. § 725.607.

## II. Standard of Law

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Id. at 255, 106 S.Ct. 2505. The moving party has the burden of initially

---

1. In that decision, issued on June 20, 2002, the BRB also modified the commencement date to January 1, 1976.

2. See the Court's previous ruling on this issue in Nowlin v. Eastern Associated Coal Corp., 266 F.Supp.2d 502 (N.D.W.Va.2003).

showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

### III. The Penalty Regulation

"The BLBA established a comprehensive scheme designed to compensate miners for medical problems and disabilities related to pneumoconiosis." *Kinder v. Coleman & Yates Coal Co.*, 974 F.Supp. 868, 870 (W.D.Va.1997) (citing 30 U.S.C. §§ 901–945). It incorporates significant portions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), including the provision assessing a twenty percent penalty for failure to timely pay compensation, 33 U.S.C. § 914(f). *See* 30 U.S.C. § 932(a) (incorporating provisions of the LHWCA); *see also Donovan v. McKee*, 669 F.Supp. 138, 140 (S.D.W.Va. 1987) (observing that the penalty provision of the LHWCA had been incorporated into the BLBA).

The BLBA further confers on the Secretary of Labor (the "Secretary") the authority and discretion to vary the provisions of the LHWCA to accommodate the needs of the black lung compensation program.

*See* 30 U.S.C. § 932(a); *Director, OWCP v. Nat'l Mines Corp.*, 554 F.2d 1267, 1274 (4th Cir.1977). Using this authority, the Secretary has promulgated 20 C.F.R. § 725.607 to implement 33 U.S.C. § 914(f). Section 725.607(a) establishes a mandatory twenty percent penalty to be assessed on operators who do not timely comply with an effective order to pay benefits. It provides in pertinent part:

> (a) If any benefits payable under the terms of ... a decision and order filed and served by an administrative law judge ... are not paid by an operator or other employer ordered to make such payments within 10 days after such payments become due, there shall be added to such unpaid benefits an amount equal to 20 percent thereof ... unless review of the order making such award is sought as provided in section 21 of the LHWCA and an order staying payments has been issued.

20 C.F.R. § 725.607(a). The regulation further states that a claimant eligible to receive a penalty payment under (a) will receive it even if benefit payments were timely made by the Trust Fund. 20 C.F.R. § 725.607(b).[3] Finally, it provides that "[t]he fund shall not be liable for payments in addition to compensation under any circumstances." 20 C.F.R. § 725.607(c).

### IV. Questions Presented

This case raises the following questions:

1. Is the Director's interpretation of the BLBA and its implementing regulations entitled to the Court's deference in this case?

2. Were benefits timely paid pursuant to 20 C.F.R. § 725.607?

---

**3.** 20 C.F.R. § 607(b) provides in full: "If, on account of an operator's or other employer's failure to pay benefits as provided in paragraph (a) of this section, benefit payments are made by the fund, the eligible claimant shall nevertheless be entitled to receive such additional compensation to which he or she may be eligible under paragraph (a) of this section, with respect to all amounts paid by the fund on behalf of such operator or other employer."

3. Which benefits paid by the Trust Fund are "unpaid benefits" under 20 C.F.R. § 725.607?

4. Does 20 C.F.R. § 725.607 creates an obligation for an employer to pay a twenty percent penalty notwithstanding that the claimant received benefits from the Trust Fund in a timely manner? and

5. Is 20 C.F.R. § 725.607 valid as "reasonably related" to the Black Lung Benefit's Act's purpose?

## V. Analysis

The Court will address the questions seriatim.

### A. Deference to the Director's Interpretation

■ The Court must first determine whether it must defer to the Department of Labor's construction of the regulations at issue. Ordinarily, a court should defer to an agency's reasonable interpretation of a statute it administers. *See Betty B Coal Co. v. Director, OWCP*, 194 F.3d 491, 498 (4th Cir.1999). This rule recognizes that, because resolution of statutory ambiguities often turns on policy determinations, "[f]ederal judges—who have no constituen-cy—have a duty to respect legitimate policy choices made by those who do." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

Despite this general rule, Eastern asserts that judicial deference is not required in this case because such deference is unnecessary where the Director has taken inconsistent positions without explanation.[4] *Id.* at 698. Although this is a recognized exception to the general rule of deference, it applies only where the agency urges an interpretation that is at odds with its own historical position. *See id.* Eastern has not identified how the interpretation advocated by the Director in this litigation is at odds with any past position.[5] Accordingly, the general rule of deference applies.

### B. Were benefits timely paid?

■ Under § 725.607, a twenty percent penalty is assessed only if an operator or other employer ordered to make payments fails to make them "within 10 days after such payments become due ...." 20 C.F.R. § 725.607(a).[6] The parties dispute

---

4. Interestingly, none of the three cases cited by Eastern as support for this exception actually applies it. In *Pauley*, the Supreme Court held that the exception did not apply because the Director's position had not changed. *See* 501 U.S. at 696, 111 S.Ct. 2524 (concluding that deference was required because the agency had held "unswervingly" to its position) In the other two cases cited, the Fourth Circuit did not reach the issue of whether deference was required. *See Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 n. 10 (4th Cir. 2000) (explicitly stating that, because it reached a decision on other grounds, it need not consider the argument that the agency's position was inconsistent with the one it took in a prior case); *Malcomb v. Island Creek Coal Co.*, 15 F.3d 364, 367 n. 2 (4th Cir.1994) (observing that it need not reach the issue of

whether deference to the agency's position was required because its holding was consistent with the Director's position).

5. Rather than arguing that the Director has taken inconsistent positions, Eastern focuses on how it perceives the Director's position to be at odds with the text and policy of the BLBA and its implementing regulations. Thus, Eastern's criticism is not that the Agency is capricious, but simply that the interpretation that it suggests is unreasonable.

6. 30 C.F.R. § 607(a) also allows an operator to avoid the penalty by seeking review of the order as provided in § 21 of the LHWCA and obtaining an order staying payments. That exception is not an issue in the case at bar.

when the payments "became due," and, consequently, whether they were paid within ten days of becoming due.

Nowlin maintains that payments "became due" on July 1, 1999. The relevant regulation provides that the penalty is assessed for the late payment of "benefits payable under the terms of ... a decision and order filed and served by an administrative law judge ...." *Id.* Nowlin claims that this condition was satisfied when the ALJ's decision was filed with the district director. According to Nowlin, the only remaining prerequisites required for the benefits to become due was for the district director to compute monthly payments and for thirty days then to elapse. In support of this contention, Nowlin cites 20 C.F.R. § 725.502(b)(2), which states unconditionally that "[b]enefits and interest payable for such periods shall be due on the thirtieth day following issuance of the district director's computation." 20 C.F.R. § 725.502(b)(2).

In the case at bar, the district director computed payments on June 1, 1999. Thus, under Nowlin's theory, Eastern's payments became due on July 1, 1999, and a penalty arose when they did not commence within ten days thereafter.

Significantly, Nowlin maintains that the single late payment entitles her to receive a twenty percent penalty on all benefits paid to her by the Trust Fund. As a result, she fails to address whether "payments became due" pursuant to any previous ALJ awards.

Eastern also focuses, at least initially, only on the period following the final award. Although it does not dispute that the award eventually became effective, Eastern maintains that it did not become subject to any penalty because that deci-sion, like the previous ones, was subject to review by the BRB. According to Eastern, benefits did not become due until (a) the BRB affirmed the award on June 22, 2000, and (b) the sixty days that Eastern had to appeal the adverse decision elapsed.

Eastern next argues that, even after the decision became final, payments did not become due until they were calculated and the statutory period had elapsed. It maintains that its obligation to pay Nowlin was not clarified until it received a letter dated November 14, 2000 from the West Virginia OWCP informing it of the amount of monthly benefits due to Nowlin and in repayment to the Trust Fund. In support of its position, Eastern quotes from the general order issued by the ALJ, which expressly delegated the computation of benefits to the Director.

Eastern then suggests two possible dates when benefits became due, either of which would exempt it from paying a penalty. It first cites 20 C.F.R. § 725.502(b)(1), which states in pertinent part: "While an effective order requiring the payment of benefits remains in effect, monthly benefits ... shall be due on the fifteenth day of the month following the month for which the benefits are payable." According to Eastern, at the earliest, benefits became payable on November 14, 2000, making them due no earlier than December 15, 2000. It further argues that benefits more likely became payable thirty days after the letter, on January 15, 2001.[7]

As Eastern suggests, if the Court were to accept either of these dates, no penalty should be assessed because, under § 725.607(a), a twenty percent penalty is not added until an employer fails to make payments within 10 days after such pay-

---

7. As noted elsewhere in this opinion, the additional thirty days is derived from application of 20 C.F.R. § 725.502(b)(2), which provides that "[b]enefits and interest payable for such periods shall be due on the thirtieth day following issuance of the district director's computation."

ments become due. The Trust Fund cashed Eastern's check on December 20, 2000, a date before January 15, 2001, and less than ten days after December 15, 2000. Therefore, if Eastern is correct as to when payments became due, its payments to Nowlin did commence within ten days of becoming due.

The Director, however, concurs with Nowlin that awards become effective upon their filing with the district director. In his brief, he observes that Eastern has made a critical mistake in it analysis when it suggests that an award must be "final" to be "effective." Eastern consistently averted finality when it timely (and successfully) appealed the ALJ's awards. Its contention that finality is required for an award to be effective, however, fails to recognize that there are regulations specifically providing for when an award becomes effective, and that those regulations do not require finality.[8]

20 C.F.R. § 725.479(a), the provision governing the effectiveness and finality of ALJ decisions provides: "(a) A decision and order *shall become effective* when filed in the office of the district director ..., and unless proceedings for suspension or setting aside of such order are instituted within 30 days of such filing, the order *shall become final* at the expiration of the 30th day after such filing ...." (emphasis added). The Director argues that a plain reading of this language, and similar language in other relevant regulations, establishes that an ALJ's decision *shall* become effective at the time it is filed and automatically becomes final unless timely appealed. According to the Director, the concepts of effectiveness and finality are distinct; although an appeal delays an or-

der's finality, it does not prevent the order from becoming effective.

The Director's interpretation is reasonable, and the Court adopts it. Eastern's alternative arguments are based on the faulty assumption that penalties can only be assessed after an award becomes final. Section 725.607(a), however, contains no such requirement, but mandates only that the benefits be payable under "a decision and order filed and served by an administrative law judge." 20 C.F.R. § 725.607(a). Because the ALJ's most recent decision became effective in June 1999 and payment became due in July 1999, but was not paid until December 2000, it was not paid "within 10 days after such payments bec[a]me due," and "there shall be added to such unpaid benefits an amount equal to 20 percent thereof."

## C. Calculation of "Unpaid Benefits"

■ Having concluded that Nowlin is entitled to receive a twenty percent penalty, the Court next must determine the amount of "unpaid benefits" on which the penalty should be assessed.[9] Nowlin maintains that all of the benefits paid by the Trust Fund on Eastern's behalf became "unpaid benefits" subject to a twenty percent penalty when Eastern did not timely pay benefits after the final ALJ decision. Eastern's primary position on this issue is at the other extreme. It maintains that it timely paid benefits and suggests that there are no "unpaid benefits" on which to assess a penalty.

In his *amicus* brief, the Director has advocated an intermediate position—that a penalty should be imposed, but not on all of the benefits paid by the Trust Fund. This argument has prompted Eastern to assert a fall-back position—that a penalty

---

8. Eastern argues that the term "effective award" is undefined and must, therefore, refer to a final award.

9. The statute requires a penalty equal to twenty percent of "unpaid benefits." C.F.R. § 607(a).

should be assessed only for benefits paid by the Trust Fund after the 1999 decision became effective.

Consistent with his argument with respect to the 1999 award, the Director maintains that the penalty applies whenever Eastern failed to timely make payments pursuant to an "effective award." To determine the magnitude of the "unpaid benefits," therefore, he suggests that the Court consider not all benefits paid by the Trust Fund, but only those paid under an "effective award." The ALJ decisions favorable to Nowlin became effective when they were filed with the district director, but ceased to be effective (except the final one) when they were reversed. Thus, there were significant periods of time when no effective award was in place—before the first ALJ award became effective and during those periods between BRB reversals and subsequent ALJ decisions in Nowlin's favor.

Eastern maintains that, even if the Court accepts the argument that an ALJ order is effective upon filing with the district director, it should only be required to pay a penalty for benefits paid on its behalf pursuant to the 1999 award, the only one that became effective and remained effective. It argues that not only did reversals by the BRB render the previous ALJ decisions no longer effective, but, because the decisions did not survive review, they became "a nullity." As support, Eastern quotes the following statement from the Court's earlier decision in this case: "An effective award becomes final thirty days after it is filed in the District Director's office, or after an aggrieved party has exhausted its appeals." *Nowlin v. Eastern Associated Coal Corp.,* 266 F.Supp.2d 502, 505 (N.D.W.Va.2003) (cit-

ing 33 U.S.C. § 921(a)). Reliance on this quotation, however, misses the mark for it addresses only when an order is final, and in no way undermines the director's assertion as to when an award is effective.

Eastern further urges the Court to reject the Director's position that a penalty should be assessed on benefits paid pursuant to awards that were later reversed. It maintains that this construction is "unworkable and illogical" because an operator would be responsible for paying a penalty on benefits that were "errantly awarded." Its concern is misplaced, however, because there is a key safeguard in the regulatory framework for the operator—there is no basis to hold the operator liable for penalties for unpaid benefits unless the benefits, as here, are ultimately awarded. If an operator elects not to pay benefits during an appeal, and succeeds on appeal and on remand, there would be no basis for assessing a penalty for the benefits initially awarded by the ALJ. Thus, the Court finds that the interpretation advocated by the Director does not produce an unjust or absurd result and concludes that the unpaid benefits with respect to which Nowlin is entitled to receive a twenty percent penalty consist of all benefits paid by the Trust Fund on Eastern's behalf while an effective order was in place.

In light of the fact that the parties have stipulated to the amount of benefits the Trust Fund paid Nowlin, $127,332.40, the Director can calculate the benefits by subtracting the amount paid by the Trust Fund that was not pursuant to an effective award from the total paid to determine how much was not paid by Eastern pursuant to an effective award. This amount is then multiplied by 0.20 to determine the twenty percent penalty:

| $127,332.40 | Total paid by Trust Fund to Nowlin |
|---|---|
| (-)$ 47,866.20 | Amount paid by Trust Fund to Nowlin before any effective award |
| (-)$ 24,858.40 | Amount paid by Trust Fund to Nowlin between BRB decisions vacating ALJ awards and subsequent ALJ awards on remand (when there was no effective award in place) |
| $ 54,607.80 | Amount paid by Trust Fund to Nowlin pursuant to an effective award (amount subject to penalty). |
| (*)0.20 | Penalty rate |
| $ 10,921.56 | Penalty due |

### D. Impact of Payment By the Trust Fund

■ Although it failed to timely pay Nowlin benefits, Eastern argues that she cannot recover a penalty because she received benefits from the Trust Fund throughout the pendency of the appeal. There is no dispute that Nowlin began receiving benefits from the Trust Fund at the time they were first awarded. According to the plain language of the regulation, however, the issue of whether a penalty should be imposed when the claimant was compensated by the Trust Fund, but not by the operator, was considered and was explicitly resolved in favor of applying the penalty.

The twenty percent penalty applies "[i]f any benefits payable ... are not paid *by an operator or other employer* ordered to make such payments." 20 C.F.R. § 725.607(a) (emphasis added). The language is clear: To avoid the penalty, the benefits must be paid "by an operator or other employer." The plain meaning is further reinforced by § 725.607(b), which states that if "benefit payments are made by the fund, the eligible claimant shall nevertheless be entitled to receive additional compensation ... under paragraph (a)." This unambiguous language disposes of any assertion that the twenty percent penalty was not intended to apply whenever the Trust Fund makes payments on an operator's behalf.

### E. Validity of 20 C.F.R. § 725.607.

■ Perhaps recognizing the weakness of its arguments that no penalty is required under the regulations, Eastern also claims that 20 C.F.R. § 725.607 is invalid because it is unwise, unfair and ill-considered. The Court's power to find regulations invalid, however, is quite limited.

■ The law imposes a heavy burden on employers challenging the validity of a regulation promulgated under a statute such as the Black Lung Benefits Act that provides a broad grant of rulemaking authority. *Harman Min. Co. v. Director, OWCP,* 826 F.2d 1388, 1390 (4th Cir.1987). "Such regulations are presumptively valid and will be sustained 'so long as' [they are] 'reasonably related to the purposes of the enabling legislation.'" *Id.* (quoting *Mourning v. Family Publications Services, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)). * *

Looking first to the enabling legislation, the statutory basis for the twenty percent penalty is found in the LHWCA, 33 U.S.C. § 914(f), which has been incorporated by statute into the BLBA. *See* 30 U.S.C. § 932(a); *Donovan v. McKee,* 669 F.Supp. 138, 140 (S.D.W.Va.1987) (observing that the penalty provision of the LHWCA had been incorporated into the BLBA). The BLBA further confers on the Secretary the authority and discretion to vary provisions of the LHWCA. *See* 30 U.S.C. 932(a); *Director, OWCP v. Nat'l Mines Corp.,* 554 F.2d 1267, 1274 (4th Cir.1977).

The penalty provision of the LHWCA states as follows:

(f) Additional compensation for overdue installment payments payable under terms of award If any compensation, payable under the terms of an award, is not paid within ten days after it becomes

due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an order staying payment has been issued by the Board or court.

33 U.S.C. § 914.

The purpose of the BLBA is to make coal mine operators primarily liable for benefits due their former employees who are disabled due to pneumoconiosis (i.e., "black lung"). Although the Trust Fund exists as a safety net to pay benefits when a coal mine operator defaults or cannot be held liable, Congress intended operators, not the Trust Fund, to "bear the liability ... to the maximum extent feasible." *Old Ben Coal Co. v. Luker,* 826 F.2d 688, 693 (7th Cir.1987) (quoting S. Rep. 95–209, 95th Cong., 1st Sess. 9 (1977) 1978 U.S.C.C.A.N. 237, *reprinted in Committee on Education and Labor, House of Representatives, 96th Cong., Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977* at 612 (Comm.Print) (1979).)

This statutory language and purpose is relevant to a determination of whether the Secretary acted within his discretion by implementing § 914(f) through § 725.607. The regulation varies from the statutory language in three material respects, all of which address the same issue: To avoid the penalty, the operator must directly pay the claimant in a timely manner. Specifically, the regulation first modifies § 914(f)'s phrase "not paid" to "not paid by an operator or other employer ...." 20 C.F.R. § 725.607(a). Second, it adds language providing that a claimant is entitled to additional compensation even if the Trust Fund pays benefits on behalf of a defaulting operator. 20 C.F.R. § 725.607(b). Finally, it clarifies that the

Trust Fund may never be held liable for the penalty. 20 C.F.R. § 725.607(c).

At the time this regulation was promulgated, the Secretary stated that it "is intended to encourage the prompt payment of benefits by operators whether or not additional proceedings are pursued." 43 Fed.Reg. 26815 (Aug. 18, 1978). In his brief, the Director further has explained that the penalty assists claimants who have meritorious claims by exacting a cost on operators who engage in protracted litigation. It also argues that the provision protects the Fund from becoming an "operator-surrogate." The Director maintains that these regulatory goals are reasonably related to the statutory goal of imposing primary liability on coal mine operators.

Eastern maintains that the regulation is not authorized by § 914(f) because the penalty was directed toward "unpaid compensation." According to Eastern, in the context of the LHWCA, claimants possibly could go unpaid because there is no trust fund. However, because the Trust Fund intervenes and pays BLBA claims not being paid by the operator, there is no chance claimants would go unpaid. Consequently, they are not entitled to receive additional compensation due to a delay.

Although Eastern makes some pertinent distinctions between the policy goals served by the penalty under the LHCWA as compared with the BLBA, these arguments more properly ought to be directed to Congress or to a regulatory authority. There are only two rational ways to apply the penalty provisions of the LHCWA to the BLBA. Either "compensation" could be considered "unpaid" because it was not paid by the operator, or it could be considered paid because the claimant receives substitute compensation from the Trust Fund. Through § 725.607, the Secretary

has clearly adopted the former construction.

Eastern suggests that the Trust Fund is sufficient to compensate claimants. Repeated appeals over nineteen years, however, illustrate why imposition of a penalty has a residual compensatory function despite the existence of the Trust Fund, for it can compel operators to curb their appeals and give meritorious claims finality. Moreover, even when claims lack merit, and the interim benefits must be repaid, the public is served by placing the risk of non-collection of overpayments on the coal mine operator rather than on the Trust Fund.

Thus, because it furthers the compensation goal of the original statutory provision and the BLBA's goal of imposing primary liability on operators when possible, § 725.607 is a valid, reasonable exercise of the Secretary's discretionary rulemaking authority.

## VI. *Conclusion*

Based on the foregoing, the Court **GRANTS–IN–PART** and **DENIES–IN–PART** the cross-motions for summary judgment and **ORDERS AS FOLLOWS:**

1) Eastern must pay Nowlin a penalty under 20 C.F.R. § 607 in the amount of $10,921.56 within thirty days following the entry of this Memorandum Opinion;

2) This case is **DISMISSED WITH PREJUDICE** and stricken from the docket of the Court.

The Clerk is directed to transmit copies of this Order to counsel of record by United States mail.