In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-1075

NANCY BAILEY, on behalf of CHARLES BAILEY,

*Petitioner*,

*v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondent*.

———————————

Petition for Review of an Order of the
Benefits Review Board.
Nos. 18-BLA-0504; 18-BLA-0505.

———————————

ARGUED DECEMBER 9, 2020 — DECIDED MARCH 11, 2021

———————————

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Petitioner Nancy Bailey filed this petition for review to contest the Department of Labor Benefit Review Board's (the "Board") decision affirming an offset to her husband's federal-benefits award. Charles Bailey, a former coal miner, qualified for disability benefits under the Black Lung Benefits Act (the "Act"). The Office of Workers' Compensation Programs ("OWCP") subsequently realized

that Charles Bailey had received a state workers' compensation award nearly ten years earlier for the same disability and determined that the federal benefits should be offset to account for the state award. Petitioner contested that decision, arguing both that the Act did not authorize an offset and that, if it did, the OWCP District Director erred in calculating the amount. An administrative law judge ("ALJ") upheld the Director's decision, and the Board affirmed. We agree that the Director correctly offset the federal benefits and deny the petition for review.

## I.

As a result of his years as a coal miner, Charles Bailey became partially disabled after contracting pneumoconiosis, a debilitating lung disease caused by inhalation of coal dust. In July 2002, he entered into an agreement with his employer to settle his state workers' compensation claim for that disability. The parties agreed that he was rendered 15% disabled and settled on a $35,000 payout. Of that total, $27,677.50 was designated as Charles Bailey's take-home amount, while the remaining $7,322.50 represented attorney's fees and costs. The agreement indicated that the take-home amount represented payments of $135.67 per month for seventeen years, beginning in July 2002.

In November 2011, Charles Bailey filed a claim for federal benefits under the Act. The OWCP did not grant Charles Bailey's claim until October 2013, but his benefits entitlement began the month he filed his claim and continued through May 2016—the month preceding the month that he died. At the time of his death in June 2016, he was entitled to $52,088.60 for the 55 months from November 2011 through May 2016. He had received benefits from October 2013 through May 2016,

totaling $30,507.70. He was still owed a portion of his $52,088.60 in benefits, however, for the months from November 2011 through September 2013, which amounted to $21,508.90. Charles Bailey's employer—which was required to pay the federal benefits awarded—went bankrupt before he received the remaining $21,508.90. He then sought the remaining benefits from the federal Black Lung Disability Trust Fund (the "Trust").

While the OWCP approved the claim for payment from the Trust, a District Director reevaluated the original federal-benefits award. The Director determined that Charles Bailey's state workers' compensation award represented monthly state benefits, some of which ran concurrent with his federal-benefits eligibility period. As a result, the Director determined that the federal benefits must be offset by the amount of state benefits received for that time—$135.67 per month over 55 months ($7,461.85). The OWCP subtracted this amount from the $21,508.90 in remaining benefits. Petitioner contested that decision.

The ALJ sided with the Director, and the Board affirmed that decision. We examine the Board's order for errors of law and for compliance with its scope of review, which is circumscribed by the Act and limited to ensuring that the ALJ's decision is "rational, supported by substantial evidence, and in accordance with applicable law." *Consol. Coal Co. v. Dir., OWCP*, 911 F.3d 824, 838 (7th Cir. 2018); *see also* 33 U.S.C. § 921(b)(3), (c); 20 C.F.R. § 802.301(a). While our review necessitates an examination of the record and ALJ order, "we do

not reassess the facts or substitute our judgment for that of the ALJ." *Id.* Upon review, we deny the petition.[1]

## II.

The Black Lung Benefits Act, as its title suggests, is a federal statute providing benefits for miners who are disabled by a form of pneumoconiosis—black lung disease. It works in tandem with state benefits programs to ensure that between the two sources miners receive a minimum amount of benefits. Under the Act's implementing regulations, federal benefits must be reduced by the amount of a state workers' compensation award for pneumoconiosis disability if: (1) the state award is for the same months as the federal award, 20 C.F.R. § 725.535(b), or (2) the state award is a lump-sum substitute for periodic payments that would otherwise cover the same benefits period as the federal award, § 725.535(c). Because Charles Bailey's state workers' compensation award was a single payment, § 725.535(c) is the most relevant provision.

The question of whether his state benefits constitute a lump-sum substitution for periodic payments within the meaning of § 725.535(c) turns on the interpretation of the workers' compensation settlement agreement between Charles Bailey and his employer. The parties stipulate that the agreement is governed by Illinois contract law.[2] Two pages of

---

[1] While we agree with the ALJ's decision, we do not condone the callous assertion that Charles Bailey won the "actuarial gamble" because he received state benefits calculated to cover seventeen years, even though he survived for just fifteen years after receiving those benefits.

[2] Petitioner asserts that Illinois law governs. The Director did not disagree and noted that the agreement settled a claim under Illinois law between

the Terms of Settlement Attachment to the contract are relevant for our purposes. Page one states that Charles Bailey shall receive a "lump sum payment of 35,000." Dkt. 26 at 59. The next page contains a key paragraph with three subparts that provides as follows:

> The parties expressly state and the Industrial Commission having reviewed the medical evidence being otherwise fully advised in the premises finds that the ***said lump sum amount is not a substitute for periodic payments***, but represents:
>
> (1) Payment of Attorney's fees to Petitioner's counsel in the sum of $7,000.00;
>
> (2) Reimbursement of court costs and expenses to Petitioner's counsel in the sum of $322.50;
>
> **(3)** ***The balance of the settlement proceeds*** $27,677.50, after deducting Attorney's fees, court costs and expenses, and medical expenses, ***represents a compromise agreement of the weekly or monthly benefit of Petitioner*** from the date the contract was entered into, July 17, 2002, over his life expectancy. The life expectancy of the Petitioner during this period is 17 years. (U.S.

---

an Illinois employer and employee for an injury that occurred in Illinois. Consequently, we view the parties as stipulating to Illinois law.

> Department of Labor, Bureau of Labor Sta-
> tistics, Revised Work Life Tables) ***pro rata
> payments over the period contemplated by
> this agreement are based on a weekly pay-
> ment rate of $31.31 and a monthly pay-
> ment rate of $135.67*** as and for Petitioner's
> alleged incapacity to pursue his usual and
> customary line of employment. ***Said pay-
> ments, however, shall be made in a lump
> sum.***

*Id.* at 60 (emphasis added).

Petitioner seizes on a single phrase from the beginning of
the paragraph: "the lump sum amount is not a substitute for
periodic payments." She argues that by the agreement's ex-
press terms, the settlement award does not fall within the aus-
pices of § 725.535(c). Petitioner also suggests that this phrase
conflicts with subsection (3), rendering the agreement ambig-
uous. That interpretation, however, takes the phrase out of
context.

The ALJ read the agreement as designating the take-home
portion of the settlement as a lump sum that "translated into
monthly benefits," and the Board agreed. We see no error in
this interpretation. The lump-sum amount referenced in the
initial sentence is the $35,000 total settlement award men-
tioned on the preceding page. The following three subsections
represent a breakdown of this total amount. The third subsec-
tion, which lists the portion of the settlement that goes to
Charles Bailey, states that *this* portion represents the "weekly
or monthly benefit of the Petitioner" for the duration of sev-
enteen years, though it is to be paid in the form of a "lump
sum." Dkt. 26 at 60. That language tracks the conditions for

offset described in § 725.535(c). Although the Petitioner insists that the first sentence of the paragraph creates ambiguity, that is true only if read in isolation from the remainder of the paragraph.

Additionally, Petitioner's interpretation of the agreement runs afoul of Illinois contract principles, under which we must give language its "plain and ordinary meaning" and avoid an interpretation that would render a contract provision null. *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020). Petitioner's view of one sentence would impermissibly write off an entire subsection clarifying that sentence. We reject that interpretation and hold that the Board and ALJ did not err in determining that the settlement agreement designates Charles Bailey's $27,677.50 portion of the award as a lump-sum substitute for periodic benefits.

The fact that Charles Bailey received his state benefits years before he became eligible for federal benefits does not alter this conclusion. Section 725.535(c) does not require that the lump sum be paid during the beneficiary's federal-benefits eligibility—just that it be a substitute for periodic payments that would otherwise overlap with the federal benefits.[3] Both the ALJ and the Board correctly observe that

---

[3] Section 725.535(c) provides: "Where a State or Federal benefit is paid periodically but not monthly, or in a lump sum as a commutation of or a substitution for periodic benefits, the reduction under this section is made at such time or times and in such amounts as the Office determines will approximate as nearly as practicable the reduction required under paragraph (b) of this section." There is no indication that an offset depends upon receipt of the state benefits during the federal-benefits eligibility period. Subsection (b) reinforces that interpretation; it requires that federal

Charles Bailey's settlement agreement specified the range of time that the lump sum was intended to cover and that the time frame overlaps with his federal-benefits eligibility. As a result, the Fourth Circuit's opinion in *Harman Mining Co. v. Director, OWCP*, upon which Petitioner relies, is inapposite. 826 F.2d 1388 (4th Cir. 1987). In *Harman*, the lump-sum state award was both paid prior to the petitioner's federal-benefits eligibility and "covered benefits for a period ending before claimant became entitled to federal benefits…." *Id.* at 1389. *Harman* does not foreclose § 725.535(c)'s applicability here.

### III.

As a separate argument against offset, Petitioner contends that it frustrates the purpose of the Act. We disagree. The Act's goal is to "provide benefits, *in cooperation with the States*, to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease…." 30 U.S.C. § 901(a) (emphasis added). In keeping with this goal, the Act mandates that federal benefits "shall be reduced" "by the amount of any compensation received" under state worker's compensation laws due to pneumoconiosis. 30 U.S.C. § 932(g). The offset in this case not only comports with the Act's purpose—it is required by the Act.

Petitioner asserts that the Department of Labor has interpreted the Act to guarantee minimum monthly benefits and argues that if the federal-benefits award is reduced, the

---

benefits be offset by state benefits received "*for* such month"—not during the same month. § 725.535(b) (emphasis added).

OWCP violates its interpretation of the Act. That argument is unavailing. Between the state and federal benefits, Charles Bailey received an amount that exceeded his federal minimum benefits.[4]

Under the Act, Charles Bailey was entitled to $52,088.60 over the 55 months from November 2011 through May 2016 (his "federal minimum benefits"). But he also received state benefits meant to cover those months. Taking the Director's breakdown of the workers' compensation award as correct—which we will discuss below—Charles Bailey's state benefits awarded him $135.67 a month. The Director reduced the federal benefits by this amount: $52,088.60 − ($135.67 x 55) = $44,626.75. Because the Director subtracted only what Charles Bailey received in state benefits and no more, he received the required minimum benefit amount. That he reached that amount through both state and federal funding is of no consequence.

IV.

Despite Petitioner's argument to the contrary, the ALJ and Board also did not err in holding that the Director properly calculated the offset amount. Like the applicability of the offset, the amount of the offset is dependent on a contractual interpretation. The Director based her calculation on subsection (3) of page two of the settlement agreement. That provision provides that Charles Bailey's $27,677.50 take-home amount

---

[4] Charles Bailey was eligible for federal benefits for 55 months for a total of $52,088.60 and was paid $44,626.75 after the state-benefits offset. Collectively, he received $72,304.25 ($27,677.50 in state benefits plus $44,626.75 in federal benefits), which exceeds the $52,088.60 federal minimum benefits OWCP awarded.

is based on a monthly payment of $135.67 over seventeen years. Petitioner relies on a different provision from the previous page, which states that the "amount of $35,000.00 represents approximately 15% [man as a whole] or 75.16 weeks of compensation at the [permanent partial disability] rate of $465.67 per week based on the last date of exposure."[5] From this, she raises two primary arguments.

First, Petitioner proposes that the offset should be calculated at the rate of $465.67 per week rather than $135.67 per month, with a start date of either July 28, 1998 (the date her husband was last exposed to coal-mine dust) or July 17, 2002 (the contract date). Under either of those start dates, the state benefits would be exhausted long before Charles Bailey was eligible for federal benefits, and there would be no offset. While the Board observed that this provision and the page-two provision advanced by the Director were "seemingly in tension," it concluded that the ALJ reasonably relied on the more detailed page-two provision. We agree.

Under the Petitioner's reading of the agreement, the page-two provision—despite being the only provision to specifically list a breakdown of Charles Bailey's take-home portion—would be nullified. By contrast, the Director's interpretation reconciles both provisions. On that view, the page-one provision addresses the method of calculation for the total

---

[5] Man as a whole (or "percentage of the person as a whole") is a metric for disability compensation that is recognized under Illinois law. It is employed primarily when a person's injuries "partially incapacitate him from pursuing the duties of his usual and customary line of employment but do not result in an impairment of earning capacity…." 820 ILCS 305/8(d)(2); *see also Gallianetti v. Indus. Comm'n of Ill.*, 734 N.E.2d 482, 488 (Ill. App. Ct. July 28, 2000).

settlement, while the page-two provision explains the periodic distributions represented by Charles Bailey's take-home portion. The ALJ and Board's acceptance of the Director's interpretation was not contrary to applicable law.

Alternatively, Petitioner argues that the Director should have discounted the state-benefits offset by 15% rather than subtracting the entire amount. For support, she cites *Lucas v. Director, OWCP*, 14 Black Lung Rep. 1-112, 1990 WL 284124, at 1 (Ben. Rev. Bd. Aug. 30, 1990) (en banc). There, a miner received a state disability award after a determination that he was 87% disabled. Because pneumoconiosis accounted for only 30% of his disability, his federal benefits under the Act were offset by only 30% of the total state benefits that overlapped. *Id.* at 1–2. *Lucas* does not map onto this case. Charles Bailey did not receive a general disability award of which a portion was derived from a pneumoconiosis disability. The entirety of the $35,000 was based on his pneumoconiosis disability, which rendered him 15% disabled. There is no reason to discount the state-benefits offset here, and the ALJ and Board did not err by declining to do so.

## V.

Federal regulations require that Charles Bailey's federal benefits be offset by the overlapping amount of his state workers' compensation award. The Director recognized that and correctly calculated the offset amount. Given that the Board's decision approving that offset was legally correct and did not exceed its scope of review, we deny the petition for review.